UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

THE CHARTER OAK FIRE INSURANCE COMPANY,

Plaintiff,

v.

SHIPYARD BREWING COMPANY, LLC,

Defendant.

Civil Action No. ___________________

**COMPLAINT FOR DECLARATORY RELIEF**

NOW COMES the Plaintiff, The Charter Oak Fire Insurance Company, and for its Complaint against Defendant Shipyard Brewing Company, LLC, seeks declaratory relief pursuant to 28 U.S.C. § 2201 as follows:

**THE PARTIES**

1. Plaintiff, The Charter Oak Fire Insurance Company ("Charter Oak"), is an insurance company organized under the laws of Connecticut, with its principal place of business located at One Tower Square, Hartford, Connecticut.

2. Defendant Shipyard Brewing Company, LLC ("Shipyard"), is a limited liability company organized under the laws of Maine, with its principal place of business located at 86 Newbury Street, Portland, Maine.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Charter Oak and Shipyard are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391 as Shipyard is subject to personal jurisdiction in Maine, because the insurance policy in question was issued in Maine, and because Shipyard regularly conducts business in Maine.

**FACTS COMMON TO ALL COUNTS**

***The Claim***

5. At all relevant times, Shipyard was in the business of brewing, bottling, marketing and selling a variety of craft beer products.

6. Upon information and belief, Shipyard contracted with Blues City Brewery, LLC ("BCB") for use of a brewery and bottling facility located at 5151 East Raines Road, Memphis, Tennessee (the "BCB Facility"), in order to brew and package certain of Shipyard's beer products.

7. At all relevant times, Charter Oak and Shipyard were parties to a commercial insurance policy bearing policy number 630-9D038652 (the "Policy"). The Policy has effective dates of January 1, 2016 to January 1, 2017, identifies Shipyard as a Named Insured, and lists the BCB Facility on its Schedule of Locations and Buildings. Relevant excerpts of the Policy are attached hereto as **Exhibit A**.

8. Upon information and belief, in May 2016, Shipyard utilized the BCB Facility for the brewing, production and bottling of certain of Shipyard's "Pumpkinhead Ale" ("Pumpkinhead"), a seasonal flavored beer.

9. At all relevant times, Shipyard's agent and brewer, Jakob Holz, was present at the BCB Facility and oversaw the Pumpkinhead brewing, processing, production and bottling, including the quality control measures.

10. On or about July 27, 2016, Shipyard learned that lactobacillus and pediococcus bacteria (collectively the "Bacteria") were detected in bottles of Pumpkinhead brewed at the BCB facility.

11. The Bacteria found in the Pumpkinhead product does not induce and is not capable of inducing physical distress, illness or disease in humans. In fact, the Bacteria are commonly added to a variety of food and beverage products, among them yogurt and beer.

12. The Bacteria can alter the flavor profile of beer.

13. Upon information and belief, Shipyard did not intend for the Bacteria to be added to the Pumpkinhead that was brewed and bottled at the BCB Facility in 2016.

14. On August 4, 2016, Shipyard notified Charter Oak of its intent to make a claim under the Policy for the loss of its stock of bottled Pumpkinhead produced at the BCB Facility (the "Loss of Stock"). At that time, Shipyard advised Charter Oak that, (1) certain of its stock of Pumpkinhead brewed at the BCB Facility was contaminated with the Bacteria, (2) the Bacteria is not harmful to humans but can alter the flavor profile of Pumpkinhead, (3) Shipyard did not know how the Bacteria made its way into the Pumpkinhead stock, and (4) the contaminated Pumpkinhead stock could not be sold. In addition to seeking indemnity for the claimed Loss of Stock, Shipyard advised Charter Oak that it might sustain an unspecified loss of Business Income and/or incur Extra Expenses (collectively the "Time Element Losses").

15. After timely acknowledging Shipyard's notice of an alleged loss, Charter Oak began an investigation into the nature, cause and extent of the loss.

16. By letter dated August 8, 2016, and in subsequent communications during the course of its investigation of the Loss of Stock, Charter Oak advised Shipyard that its

investigation would be conducted subject to and without waiver of all rights granted to it under the Policy and applicable law.

17. Upon the completion of its investigation, Charter Oak advised Shipyard, through letters to its counsel dated September 9, 2016 and October 7, 2016, that Charter Oak had decided to deny coverage for Shipyard's claimed losses. True and accurate copies of Charter Oak's September 9, 2016 and October 7, 2016 letters to Shipyard are attached hereto as **Exhibit B** and **Exhibit C** and are incorporated herein by reference.

18. Shipyard, through its counsel, has disputed Charter Oak's coverage declination, and continues to assert an entitlement to coverage for the claimed Loss of Stock and Time Element Losses under the Policy. Therefore, there is an actual and justiciable controversy between Charter Oak and Shipyard concerning their respective rights and obligations under the Policy with regard to these alleged losses.

***The Policy***

19. The Policy's basic grant of property insurance coverage is contained in the Deluxe Property Coverage Form and provides as follows:

> **A. COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property caused by or resulting from a Covered Cause of Loss.
>
> **1. Covered Property**
>
> Covered Property, as used in this Coverage Part, means each of the following types of property described in this Section **A.1.**, and limited in Section **A.2.**, Property and Costs Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.
>
> * * * *

**b.** **Your Business Personal Property** located in or on the designated building or structure at the premise described in the Declarations or in the open (or in a vehicle) within 1,000 feet of the described premises, consisting of the following unless otherwise specified in the Declarations:

* * * *

**(3)** "Stock";

20. The term "Covered Cause of Loss" is defined by the Policy's Deluxe Property Coverage Form as follows:

**B.** **COVERED CAUSES OF LOSS**

Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

**1.** Excluded in Section **C.**, Exclusions;
**2.** Limited in Section **D.**, Limitations; or
**3.** Excluded or limited in the Declarations or by endorsement.

21. The Deluxe Property Coverage Form contains the following exclusions:

**C.** **EXCLUSIONS**

**2.** We will not pay for loss or damage caused by or resulting from any of the following:

**i.** **Other Types of Losses**

**(7)** The following causes of loss to personal property:

* * * *

**(c)** Changes in flavor, color, texture or finish;

**(d)** Contamination by other than "pollutants"; and

* * * *

But if an excluded cause of loss that is listed in Paragraph **(1)** through **(7)** above results in any of the "specified causes of loss" or building glass

breakage, we will pay for the loss or damage caused by such "specified causes of loss" or building glass breakage.

Also, if an excluded cause of loss listed in Paragraphs **(1)** through **(5)** or **(7)** above results in mechanical breakdown or "electronic data processing equipment", we will pay for the loss or damage caused by that mechanical breakdown of "electronic data processing equipment".

* * * *

**5. Additional Exclusion**

The following exclusion applies only to loss or damage to the specific property and to loss that is a consequence of such loss or damage to the specified property.

**Loss or Damage to Products**

We will not pay for loss of or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair. This exclusion applies to any effect that compromises the form, substance, or quality of the product. But, if such error or omission results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

22. The terms "pollutants", "specified causes of loss" and "stock" are defined in the Policy's Deluxe Property Coverage Form as follows:

**J. DEFINITIONS**

**10. "Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste and any unhealthful or hazardous building materials (including but not limited to asbestos and lead products or materials containing lead). Waste includes materials to be recycled, reconditioned or reclaimed.

*** * * ***

**12. "Specified Causes of Loss"** means the following: Fire; lighting; explosion; windstorm or hail; smoke (including the emission of puff back

or smoke, soot, fumes or vapors from a boiler, furnace or related equipment); aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment; "sinkhole collapse"; volcanic action; falling objects as limited below; weight of snow, ice or sleet; "water damage", all only as otherwise insured against in this Coverage Part.

Falling objects does not include loss or damage to:

**a.** Personal property in the open; or

**b.** The "interior of a building or structure", or property inside a building or structure, unless the roof or an exterior wall of the building or structure is first damaged by a falling object.

When the Causes of Loss – Earthquake endorsement, Causes of Loss – Earthquake Sprinkler Leakage endorsement or causes of Loss – Broad Form Flood endorsement is included in this Coverage Part, "specified causes of loss" also includes such causes of loss, but only to the extent such cause of loss is insured against under this Coverage Part.

**13.** **"Stock"** means merchandise held in storage or for sale, raw materials and in-process of finished goods, including supplies used in their packaging or shipping.

23. The Policy contains a Deluxe Business Income (And Extra Expense) Coverage Form that provides, in relevant part, as follows:

**A. COVERAGE**

We will pay for:

- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

- The actual Extra Expense you incur during the "period of restoration";

caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss. . . .

## COUNT I

### Declaratory Relief Pursuant to 28 U.S.C. § 2201
### The "Contamination" Exclusion Bars Coverage for the Loss of Stock and the Time Element Losses

24. Charter Oak repeats and realleges the allegations contained in Paragraphs 1 through 23 above, as if fully set forth herein.

25. Pursuant to Exclusion C.2.i.(7)(d) of its Deluxe Property Coverage Form (the "Contamination Exclusion"), the Policy excludes direct physical loss or damage to personal property caused by or resulting from "Contamination by other than 'pollutants.'"

26. The bottled Pumpkinhead that was produced at the BCB Facility constitutes "stock," as defined in the Policy, and is among the personal property to which the Contamination Exclusion applies.

27. Shipyard has asserted that the Bacteria contaminated the bottled Pumpkinhead stock produced at the BCB Facility, rendering the beer inferior, impure and unfit for use or sale.

28. Neither of the Bacteria is a "pollutant" as that term is used in the Policy. In fact, as noted above, the Bacteria do not induce and are not capable of inducing physical distress, illness or disease in humans, and are commonly used in certain food and beverage products.

29. The claimed loss of the bottled Pumpkinhead stock brewed at the BCB Facility was not caused by, nor did it result from, any Covered Cause of Loss (as defined by the Policy). Rather, the Loss of Stock was caused by or resulted from contamination with the Bacteria, a peril excluded by the Policy.

30. The Policy requires Charter Oak to indemnify Shipyard for the actual loss of Business Income sustained due to the necessary "suspension" of Defendants' "operations"

during the "period of restoration," and for the actual Extra Expense they incur during the "period of restoration," but only if such loss of Business Income and such Extra Expense, (i) are caused by direct physical loss of or damage to property at premises described in the Declarations and for which a Business Income Limit is shown in the Declarations; and (ii) the direct physical loss or damage is caused by or results from a Covered Cause of Loss.

31. Because the claimed loss of the bottled Pumpkinhead stock brewed at the BCB Facility was caused by or resulted from "contamination other than by 'pollutants,'" the Time Element Losses are not covered by the Policy.

32. Charter Oak is entitled to a declaration that, by virtue of its Contamination Exclusion, the Policy does not obligate Charter Oak to indemnify Shipyard for the claimed Loss of Stock or the claimed Time Element Losses attributable to the Loss of Stock.

## COUNT II

### Declaratory Relief Pursuant to 28 U.S.C. § 2201
### The "Changes in Flavor" Exclusion Bars Coverage for the Loss of Stock and the Time Element Losses

33. Charter Oak repeats and realleges the allegations contained in Paragraphs 1 through 23 above, as if fully set forth herein.

34. Pursuant to Exclusion C.2.i.(7)(c) (the "Changes in Flavor Exclusion") of its Deluxe Property Coverage Form, the Policy does not provide coverage for loss or damage to "stock" or other personal property caused by or resulting from "Changes in flavor, color, texture or finish."

35. The bottled Pumpkinhead stock that was brewed and packaged at the BCB Facility constitutes "stock" and personal property, as those terms are used in the Policy.

36. The claimed Loss of Stock was not caused by, nor did it result from, any Covered Cause of Loss. To the extent the claimed Loss of Stock was caused by or resulted from a change in the flavor of bottled Pumpkinhead associated with the presence of the Bacteria, the Changes in Flavor Exclusion applies.

37. The Policy requires Charter Oak to indemnify Shipyard for the actual loss of Business Income sustained due to the necessary "suspension" of Defendants' "operations" during the "period of restoration," and for the actual Extra Expense they incur during the "period of restoration," but only if such loss of Business Income and such Extra Expense, (i) are caused by direct physical loss of or damage to property at premises described in the Declarations and for which a Business Income Limit is shown in the Declarations; and (ii) the direct physical loss or damage is caused by or results from a Covered Cause of Loss.

38. To the extent the claimed Loss of Stock was caused by or resulted from a change in flavor of bottled Pumpkinhead associated with the presence of the Bacteria, the Time Element Losses claimed by Shipyard are not covered by the Policy.

39. Charter Oak is entitled to a declaration that, by virtue of its Changes in Flavor Exclusion, the Policy does not obligate it to indemnify Shipyard for the claimed Loss of Stock or for the Time Element Losses.

**COUNT III**

**Declaratory Relief Pursuant to 28 U.S.C. § 2201**
**The Policy's "Loss or Damage to Products" Exclusion Bars Coverage**
**For the Loss of Stock and the Time Element Losses**

40. Charter Oak repeats and realleges the allegations contained in Paragraphs 1 through 23 above, as if fully set forth herein.

41. Pursuant to Exclusion C.5. of the Policy's Deluxe Property Coverage Form, *Loss or Damage to Products* ("Products Exclusion"), the Policy does not provide coverage for loss of or damage to any merchandise, goods or other product caused by or resulting from error or omission by any person or entity (including those having possession under an arrangement where work or a portion of the work is outsourced) in any stage of the development, production or use of the product, including planning, testing, processing, packaging, installation, maintenance or repair.

42. The Pumpkinhead stock brewed and bottled at the BCB Facility constitutes "merchandise, goods or other product" within the meaning of the Products Exclusion.

43. Shipyard or its agents oversaw all stages of the development, brewing, testing, processing, production or packaging of the bottled Pumpkinhead product at the BCB Facility, including quality control functions.

44. Shipyard and its agents did not intend to add the Bacteria to the bottled Pumpkinhead product in any stage of its development, brewing, testing, processing, production or packaging.

45. Upon information and belief, the Bacteria were introduced into the bottled Pumpkinhead product at the BCB Facility due to an error and/or omission that occurred during its development, brewing, production, testing, processing, production or packaging.

46. Shipyard has asserted that the Bacteria compromised the substance and/or quality of the bottled Pumpkinhead product produced at the BCB Facility.

47. The loss of or damage to the bottled Pumpkinhead product claimed by Shipyard was not caused by, nor did it result from, any Covered Cause of Loss. To the extent the loss or damage to the bottled Pumpkinhead product was caused by or resulted from an error or omission in the development, brewing, production, testing, processing, production or packaging of that product, the Products Exclusion applies.

48. The Policy requires Charter Oak to indemnify Shipyard for the actual loss of Business Income sustained due to the necessary "suspension" of Defendants' "operations" during the "period of restoration," and for the actual Extra Expense they incur during the "period of restoration," but only if such loss of Business Income and such Extra Expense, (i) are caused by direct physical loss of or damage to property at premises described in the Declarations and for which a Business Income Limit is shown in the Declarations; and (ii) the direct physical loss or damage is caused by or results from a Covered Cause of Loss.

49. To the extent the loss of or damage to the bottled Pumpkinhead product was caused by or resulted from an error or omission in the development, brewing, production, testing, processing, production or packaging of that product, the Time Element Losses are not covered by the Policy.

50. Charter Oak is entitled to a declaration that, by virtue of its Products Exclusion, the Policy does not obligate it to indemnify Shipyard for the claimed Loss of Stock or for the Time Element Losses associated with it.

**REQUESTS FOR RELIEF**

WHEREFORE, Charter Oak respectfully requests that the Court grant it the following relief:

A. Enter a declaratory judgment that Exclusion C.2.i.(7)(d), *Contamination by other than "pollutants,"* of the Policy's Deluxe Property Coverage Form applies to Shipyard's claimed Loss of Stock and Time Element Losses, and that the Policy does not obligate Charter Oak to indemnify Shipyard for such losses;

B. Alternatively, enter a declaratory judgment that Exclusion C.2.i.(7)(c), *Changes in flavor, color, texture or finish*, of the Policy's Deluxe Property Coverage Form applies to Shipyard's claimed Loss of Stock and Time Element Losses, and that the Policy does not obligate Charter Oak to indemnify Shipyard for such losses;

C. Alternatively, enter a declaratory judgment that Exclusion C.5., *Loss or Damage to Products*, of the Policy's Deluxe Property Coverage Form applies to Shipyard's claimed Loss of Stock and Time Element Losses, and that the Policy does not obligate Charter Oak to indemnify Shipyard for such losses; and

D. Grant such other relief as this Court deems just and appropriate.

Dated: December 14, 2016

RESPECTFULLY SUBMITTED,

/s/ Gregg R. Frame

Gregg R. Frame, Esq.
H. Ilse Teeters-Trumpy, Esq.
TAYLOR, McCORMACK & FRAME, LLC
30 Milk Street, 5th Floor
Portland, ME 04101
Tel: (207) 828-2005
Fax: (207) 347-4523
gframe@tmfattorneys.com
**Attorneys for Plaintiff**